WILLIAM HAMILTON *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon January 22, 1885.*

1. CRIMINAL LAW—*indictment for assault to murder—its requisites.*
It is not necessary that an indictment for a felonious assault with intent to murder should set out the manner of the assault with any degree of particularity, the *gist* of the offence being the assault with a felonious intent.

2. SAME—*the act of one as the act of all engaged in the same unlawful transaction.*    Where three persons entered the premises of another with intent to steal, and on being detected by the owner, assaulted him, and during the difficulty ensuing, one of them struck the owner and another shot at him with a pistol, it was *held,* that whatever act was done by any one of the defendants so entering the premises, was in law the act of all, and that all were guilty of an assault with intent to murder.

3. SAME—*assault to murder—pleadings and proofs as to deadly character of weapons used.*    An indictment for an assault with intent to commit murder, charged that the defendants assaulted the prosecutor with a loaded pistol and a hoe, without alleging the hoe and the pistol were deadly weapons, and there was no direct proof that they were deadly weapons: *Held,* that the indictment was sufficient, and that if it was necessary to show the weapons used were deadly ones, that was shown by proof of an assault with the pistol and hoe, and that a hoe, in legal signification, is a deadly weapon, as much so as a loaded pistol or an ax, and that proof of their deadly character was not necessary.

4. EVIDENCE—*as to matters generally known.*    Such things as all persons of ordinary intelligence are presumed to know, are not required to be proved.    It is not, therefore, necessary, on the trial of parties for an assault with a loaded pistol and a hoe, with intent to murder, to prove that they were deadly weapons.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. OLIVER A. HARKER, Judge, presiding.

Messrs. MORRIS & BOYER, for the plaintiffs in error:

The charging part of the indictment is, that the defendants, on and at, etc., "with a certain loaded pistol, and with a certain hoe, the same being a deadly weapon, which said pistol and hoe the said (defendants) then and there held in

their hands, with which said pistol and hoe the said (defendants) did then and there unlawfully make an assault upon one S. P., in the peace of the People, then and there being with an intent, then and there, with the pistol and hoe aforesaid, unlawfully, feloniously, with malice aforethought, to kill and murder the said S. P.," etc. Under this charge the People were bound to prove the hoe was a deadly weapon, and that the assault was made with both.

The defendants tried could not have been convicted as accessories to the shooting by Eaton, without also proof of the other alleged cause. 3 Greenleaf on Evidence, sec. 141; Moore's Crim. Law, sec. 138; *Rex* v. *Saunders,* 7 C. & P. 277.

The proof does not show these defendants aided and abetted Eaton in his assault, but that they prevented Eaton from shooting the prosecutor. The charge in the indictment is fatally defective, because of its uncertainty.

Mr. W. V. CHOISSER, for the People:

A person may be guilty of murder although he took no part in the killing, nor assented to any arrangement having for its object the death of another, if he combined with those who committed the deed to do an unlawful act, such as, to beat or rob, and death ensue in consequence of the attempt to execute the common purpose. *Brennan* v. *People,* 15 Ill. 511.

If a defendant, and others indicted with him, had a common design to do an unlawful act, then, in contemplation of law, whatever act any one of them did in furtherance of the original design, is the act of all, and all are equally guilty of whatever crime was committed. *Hanna* v. *People,* 86 Ill. 243.

The objection raised to the sufficiency of the indictment is certainly not well taken. It is not necessary to allege the commission of the act constituting the assault, nor to state the means used by the assailant, nor the manner of committing the assault. *Connolly* v. *People,* 3 Scam. 417; *Allen* v.

*People,* 82 Ill. 610; *McKinney* v. *State,* 25 Wis. 378; *State* v. *Chandler,* 24 Mo. 371.

The Supreme Court of Iowa, in *State* v. *Seaman,* 1 Green, 418, holds an indictment good which charges the assault to have been made with a deadly weapon, without any description of the instrument.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

At the September term, 1883, of the Saline circuit court, William Hamilton, Hat Mitchell and William Eaton were jointly indicted for an assault upon Samuel Parks, with intent to murder. At the March term, 1884, of the court, Hamilton and Mitchell were alone put upon trial, which resulted in their conviction, the jury fixing the term of their confinement in the penitentiary at two years, and the court sentenced them accordingly. The accused have brought the record here for review, and ask a reversal of the conviction mainly on the ground it is not sustained by the evidence.

The difficulty out of which the present prosecution arose, occurred on the farm of Samuel Parks, between eight and ten o'clock of the night of September 1, 1883. The account given by Parks of the affair, is in substance as follows: "For two nights previous to the difficulty some one had been in my water-melon patch. I went down to the orchard and melon patch between eight and ten o'clock. My son, Samuel, went with me, and took a shot gun. We located about ten steps apart. Soon we heard some one coming. It was Hamilton, Mitchell and Eaton. After they had crossed the fence and started in the patch, one of them said, 'The biggest ones are down this way.' Mitchell came towards me, and Hamilton and Eaton went towards the boy. He halted them. Mitchell ran. Eaton called him a damned coward, and called him back, saying, 'There's only a man and a boy,—let's get what we came after.' I invited them to go to the house with

me and eat water-melons, but they refused. Eaton told the boy not to shoot, and was rushing towards him. I told them the boy would not shoot,—that he was nothing but a boy, and not to hurt him. Hamilton said that Eaton was nothing but a boy either, and to let them fight. I started to the boy. Eaton ran up to him and knocked him down, and Hamilton caught me around the arms and threw me down. Eaton took the gun away from the boy. Hamilton fell on top of me. I turned him, and think I struck him. I was a-straddle of him. He hit me in the face and on the head with something hard. I do not know what it was. My wife now came up with a hoe. Eaton knocked her down while I was engaged with Hamilton. I saw him chuck her head upon the ground. I heard Mitchell ask Hamilton if he was on top. * * * I felt something hard on my breast. I found it was a stone, which Mitchell, I thought, was giving to Hamilton. I took it out of his hands, and hit Hamilton·three blows, and broke him loose from me, and as I was raising up, Eaton shot at me with a pistol. The powder burnt my face. * * * As we got up, Mitchell hit me on the head with a hoe. I did not know anything after that time."

Such is the general outline of the affair as given by Parks, and while there are some slight discrepancies between him and his son in their statements of the facts, yet, under the circumstances, there is nothing in them inconsistent with good faith and an honest purpose to tell the truth. In the darkness of the night the witness may have been mistaken as to some of the details, yet after making ample allowances for this, and giving the accused the full benefit of all doubts, we are of opinion there is still sufficient evidence to warrant the conviction. The fact is undisputed that the three defendants, one of whom was armed with a pistol, invaded the premises of the prosecuting witness with a criminal purpose. The business upon which the parties had deliberately entered was a hazardous one. They had a right to expect that in

the event they were detected in stealing the melons, it would result in violence endangering life or limb,—as it actually turned out afterwards. That they were all co-conspirators in a dangerous criminal enterprise, is an undisputed fact. Such being the case, whatever was done by one, in contemplation of law was done by all, and all are therefore equally responsible.

The claim that Mrs. Parks, and not Mitchell, struck her husband with the hoe, is not supported by the evidence. This hypothesis is sustained by the testimony of Mitchell alone, who, if guilty, had the strongest motives for concealing the truth. Besides, in his statement he is positively contradicted both by Parks and his wife. The latter says : "I went to the melon patch, and saw there was going to be a row. I went back to the house to get a hoe, and took it down with me. When I got there, Mr. Parks and Hamilton were on the ground, fighting, and Eaton had Sam down about six or seven feet from them. I struck Eaton with the hoe. I tried to get at Hamilton and Mr. Parks, when Eaton knocked me down. Mitchell took the hoe from me.  *  *  *  I did not strike at Hamilton with the hoe." Thus her testimony is wholly inconsistent with the idea that she struck at Hamilton with the hoe, and hit her husband.

The point is made there is no proof that the hoe with which the assault is alleged to have been made is a deadly weapon. The indictment alleges, and the proofs show, that an assault was made upon Parks with a loaded pistol and a hoe. This we think was sufficient. Conceding it was necessary that the deadly character of the weapons with which the assault was made should have been established before the jury, (a matter not necessary to be determined,) we are of opinion that was sufficiently done by proof that it was done with a hoe and loaded pistol. A hoe, both in popular and legal signification, is *per se* a deadly weapon,—fully as much so as a loaded pistol or an ax. Such things as all persons of ordinary intel-

ligence are presumed to know, are not required to be proved. While the indictment is somewhat informal, yet we think it is sufficient, at least after verdict, no motion having been made to quash. In a case of this kind the *gist* of the offence is the assault with a felonious intent, hence it is not necessary to set out the manner of the assault with any degree of particularity. 2 Wharton on Crim. Law, sec. 1282.

Upon the whole, we perceive no substantial ground for disturbing the judgment of the court below, and it is therefore affirmed.

*Judgment affirmed.*