## GARLAND CRAWFORD v. STATE OF MARYLAND

[No. 49, January Term, 1938.]

*Decided March 10th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Webster S. Blades,* for the appellant.

*Charles T. LeViness, 3rd, Assistant Attorney General,* with whom were *Herbert R. O'Conor, Attorney General,* and *J. Bernard Wells, States Attorney for Baltimore City,* on the brief, for the State.

JOHNSON, J., delivered the opinion of the Court.

Garland Crawford was on September 28th, 1937, indicted by the grand jurors of the State of Maryland for the body of Baltimore City for the murder of Loretta Anderson on August 7th of the same year. To this indictment he filed a special plea, a demurrer to which was interposed by the State and sustained. He elected to be tried before the court sitting as a jury, by whose verdict he was found guilty of murder in the second degree, and, his motion for a new trial having been heard and overruled by the Supreme Bench of Baltimore City, the trial court gave judgment that he be confined in the Maryland penitentiary for five years. Upon appeal from that judgment the principal question raised relates to

the correctness of the trial court's action in sustaining the demurrer to his special plea, which reads as follows:

"Garland Crawford, the defendant in the above case, by Webster S. Blades, his attorney, for special plea to the indictment heretofore filed herein, says that on the 31st day of August, 1937, he was arraigned before Magistrate Harry H. Fine, the magistrate duly assigned to preside at the Northwestern Police Station in Baltimore City, State of Maryland, and charged with a crime in words following:

" 'Assaulting and shooting Loretta Anderson (c), age nine months, with a pistol in Baltimore City, State of Maryland, on August 7, 1937.'

"That the aforesaid presiding magistrate had criminal jurisdiction to try said charge; that he, the defendant Garland Crawford, waived a jury trial and elected to be tried before said magistrate and pleaded 'Not Guilty' to said charge. That after a full and complete hearing upon said charge as aforesaid, he was found 'Not Guilty' of the matter whereof he stood thus charged, whereupon he was, by said presiding magistrate, duly discharged and the charge was entered 'Dismissed.'

"That he and the said Garland Crawford, defendant in the above recited charge, are one and the same person; that the charge of 'assaulting and shooting Loretta Anderson (c), age nine months, with a pistol in Baltimore City, State of Maryland, on August 7th, 1937,' of which he was thus found not guilty is the same assaulting and shooting alleged to have later caused the death of the said Loretta Anderson for which he now stands charged in the pending indictment for murder."

Appellant, in support of his contention that the court erred in sustaining the demurrer, relies solely upon the doctrine of *res judicata*, asserting that the magistrate had jurisdiction to try the case, and there adjudged the defendant not guilty of the crime he was charged as having committed, viz., "Assaulting and shooting Loretta Anderson * * * with a pistol * * *"; and that these issues having been judicially determined in his favor, he

cannot now be prosecuted for the murder of Loretta Anderson growing out of the previous charge as to which he was found not guilty, because the elements of assault and battery upon Loretta Anderson must necessarily be proved in his trial upon indictment for her murder; in short, that his acquittal by the magistrate effectively creates an estoppel by judgment which bars the State from prosecuting him upon a more serious charge growing out of his assault and battery of Loretta Anderson with a pistol; it having once been determined in a proceeding between appellant and the State of Maryland that he did not assault her with a pistol.

As against this, the State makes two contentions: (1) That the magistrate had no jurisdiction of the offense for which appellant was tried at the police station, hence his acquittal upon that charge is a mere nullity and affords him no protection whatever; (2) that his acquittal of assaulting Loretta Anderson with a pistol, being for a lesser offense than murder, does not estop the State from prosecuting him upon the murder charge.

By section 42, article 4 of the Constitution of Maryland, it is provided that justices of the peace for the several counties, as well as for Baltimore City, "shall have such jurisdiction, duties and compensation" as theretofore exercised or subsequently prescribed by law. This jurisdiction, so far as justices of the peace of the City of Baltimore are concerned, is defined by section 724 of the Baltimore City Charter (1938), and is specifically limited to the offenses of fortune telling, vagrancy, indecent exposure, preventing children from begging, punishment of adults falsely representing themselves to be the parents of children so engaged, illegally working on Sunday, punishment of tramps, disturbance of the public peace, and hearing and determining the cases of all persons brought before them charged with "assault or with assault and battery." Their jurisdiction, being thus limited, it cannot be contended, either upon principle or authority, that they have any jurisdiction to try any one charged with an aggravated assault. *Thomas, Pro-*

*cedure in Justice Cases,* sec. 2B; 35 *C. J.,* page 467; *State v. Hattabough,* 66 Ind. 223.

It will be observed that the language used in the charge preferred against him at the Northwestern Police Station, to wit, "Assaulting and shooting Loretta Anderson (c), age nine months, with a pistol in Baltimore City," etc., is entirely informal, and that the terms here employed are those of the average layman. However, when fully considered, we are of the opinion that its effect was to charge him with assaulting this colored child with intent to murder her. This conclusion is compelling when we consider that the child was assaulted with a pistol.

At the time of the decision in *United States v. Williams* (C. C.) 2 Fed. 61, 64, no punishment was provided by federal statute for an assault with a dangerous weapon, even when it involved an attempt to commit murder. The court observed that there an effort had been made to bring the case within the statute by an averment that the attempt was made "by means not constituting an assault with a dangerous weapon," but in the course of that opinion said: "Whether a particular weapon is a deadly or dangerous one is generally a question of law. Sometimes, owing to the equivocal character of the instrument—as a belaying pin—or the manner and circumstances of its use, the question becomes one of law and fact, to be determined by the jury under the direction of the court. But where it is practicable for the court to declare a particular weapon dangerous or not, it is its duty to do so. A dangerous weapon is one likely to produce death or great bodily injury. A loaded pistol is not only a dangerous but a deadly weapon. The prime purpose of its construction and use is to endanger and destroy life. This is a fact of such general notoriety that the court must take notice of it. *United States v. Small,* [Fed. Cas. No. 16, 314] 2 Curt. [241] 242; *United States v. Wilson,* 1 Baldw. 99 [Fed. Cas. No. 16, 730]."

In *Hamilton v. People,* 113 Ill. 34, the indictment for

assault with intent to commit murder charged that the defendants assaulted prosecuting witness with a loaded pistol and a hoe. There was no allegation that the pistol and hoe were deadly weapons, and no direct proof to that effect. The court there said: "The point is made there is no proof that the hoe with which the assault is alleged to have been made is a deadly weapon. The indictment alleges, and the proofs show, that an assault was made upon Parks with a loaded pistol and a hoe. This we think was sufficient. Conceding it was necessary that the deadly character of the weapons with which the assault was made should have been established before the jury (a matter not necessary to be determined), we are of opinion that was sufficiently done by proof that it was done with a hoe and loaded pistol. A hoe, both in popular and legal signification, is *per se* a deadly weapon —fully as much so as a loaded pistol or an ax. Such things as all persons of ordinary intelligence are presumed to know, are not required to be proved."

See, also, *Hochheimer's Criminal Law*, secs. 11, 68 and 340; *Wharton on Homicide* (2nd Ed.) sec. 93, page 115; *Bishop on Criminal Law* (9th Ed.) sec. 547 (2).

It is true that in each of the last cited cases, the court was considering indictments containing specific allegations of an intent to kill or murder; but in our judgment the crime appellant was charged with having committed, and as to which he was found not guilty, is in substance and effect of the same character. The jurisdiction of the justice did not extend to an offense of this nature, hence the finding of not guilty can have no legal significance.

In view of this conclusion, further discussion of the case becomes unnecessary, since even if we were prepared to accept appellant's contention respecting a plea of *res judicata* in a case supported by its averments, no such situation is here presented.

*Judgment affirmed, with costs.*